33 A.3d 984

**Olusegun OGUNDIPE**

v.

**STATE of Maryland.**

**No. 54, Sept. Term, 2010.**

Court of Appeals of Maryland.

Dec. 21, 2011.

Thomas M. Donnelly (R. Troy Mowery of Donnelly & Mowery, LLC, Baltimore, MD), on brief, for Petitioner.

Carrie J. Williams, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, * MURPHY, ADKINS, and BARBERA, JJ.

GREENE, J.

Petitioner Olusegun Ogundipe (Ogundipe) was convicted of multiple offenses following a jury trial in the Circuit Court for Washington County.[1] Before this Court, Ogundipe argues that the trial court erred in not disclosing the contents of the verdict sheet used by the jury in its deliberations. Specifically, Ogundipe presented one question for our review, which we have reworded for clarity:

> Whether there is a duty of the trial court to disclose a signed verdict sheet to a defendant or his counsel before the jury is discharged? [2]

---

* Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court; he did not participate in the decision and adoption of this opinion.

1. Ogundipe was convicted by a jury of first degree murder, attempted first degree murder, two counts of first degree assault, use of a handgun in the commission of a crime of violence, and wearing, carrying, and transporting a handgun.

2. The question presented in the petition for writ of certiorari was as follows:

Ogundipe argues that the verdict sheet was a "communication" between the court and the jury, which was required to be disclosed in accordance with Maryland Rule 4–326(d).[3] Rule 4–326(d) requires the court to notify and disclose to counsel any jury communication received, before responding to the communication. We shall hold that the jury verdict sheet is not a communication within the meaning of the Rule, and we therefore affirm the judgment of the Court of Special Appeals in holding that the trial court did not err in failing to disclose the contents of the verdict sheet prior to dismissing the jury.

## FACTS AND PROCEDURE

Ogundipe was charged with multiple crimes stemming from his involvement in an incident that occurred on July 23, 2006, in which Jackson Augustin Rodriguez was killed, Tony Perry was seriously injured, and Steven Ramel Broadhead was assaulted.[4] We adopt the following facts as stated by the

---

Whether there is a duty of the trial court to disclose a signed verdict sheet to a defendant or his counsel before the jury is discharged when that verdict sheet has been completed in violation of the trial court's instructions, which verdict sheet evidences an inconsistent verdict, confusion and/or possible acquittal, and which verdict sheet was only partially covered during oral pronouncement of the verdict by the jury?

The second portion of the question presented in the petition for writ of certiorari assumes that the verdict sheet was completed in error and that it evidences an inconsistent verdict. The Court of Special Appeals did not adopt these factual arguments in its determination of the legal issues presented, and we decline to do so as well.

3. Rule 4–326(d) states:

 **Communications with jury.** The court shall notify the defendant and the State's Attorney of the receipt of any communication from the jury pertaining to the action as promptly as practicable and in any event before responding to the communication. All such communications between the court and the jury shall be on the record in open court or shall be in writing and filed in the action. The clerk or the court shall note on a written communication the date and time it was received from the jury.

4. Ogundipe was charged with first and second degree murder and first and second degree assault of Jackson Augustin Rodriguez; attempted first and second degree murder and first and second degree assault of Tony Perry; first and second degree assault of Steven Ramel Broad-

Court of Special Appeals in *Ogundipe v. State,* 191 Md.App. 370, 991 A.2d 200 (2010):

> After a two-day trial, which began on May 13, 2008, the judge instructed the jury concerning its deliberations, as follows:
>
> Alright, ladies and gentlemen of the jury, you will retire to consider your verdict in this matter. As I indicated, there is a verdict sheet that will be given to you. It consists of twelve questions.
>
> Questions One and Two relate to the charges of first and second degree murder of Jackson Rodriguez. Question is: As to the charge of first degree murder of Jackson Augustin Rodriguez, on or about July twenty-three 2006, how do you find the defendant Olusegun Hakeem Ogundipe, guilty or not guilty?
>
> You're given further instruction then: **If your answer to that question would be not guilty, then I would ask you to consider Question Number Two, which is second degree murder of Jackson Rodriguez.**
>
> After you have done that, then Question[s] Three and Four relate to the attempted first and second degree murder of Tony Perry. You would consider first degree murder. **If your answer to that would be not guilty then you would consider attempted second degree murder of Tony Perry.**
>
> Questions Five and Six relate to the first degree assault of Jackson Augustin Rodriguez. **Using the same means of analysis, Questions Seven and Eight relate to the first and second degree assault of Tony Perry.** And Questions Nine and Ten relate to the first and second degree assault of Steven Broadhead.
>
> Question Eleven relates to the charge of the use of a handgun in the commission of a crime of violence. I would ask you to once again consider the instructions that

---

head; use of a handgun in the commission of a crime of violence; wearing, carrying, and transporting a handgun; and felon in possession of a firearm.

were given. Before you consider that question and the last question is as to the charge of wearing and carrying and transporting a handgun. How do you find the defendant, guilty or not guilty?

Once again, I would remind you that your decision must be unanimous. In other words, all twelve of you must agree.

Two hours after the jury retired to deliberate, the court reconvened, and the following discourse took place:

The Court: Alright, the defendant is present. Please bring the jury in.

(The jury returns to the jury box.)

Alright, the jury is present. The defendant and counsel are present. It's my understanding the jury has reached a verdict. Is that correct?

Foreman: Yes, sir.

The Court: Okay. Mr. Clerk, if you would take the verdict of the jury, please.

Clerk: Yes, sir. Ladies and gentlemen of the jury, are you agreed as to your verdict? If so, please answer, "We are."

Jury: We are.

Clerk: Who shall say for you?

Jury: Our foreman.

Clerk: Please stand. As to the charge of first degree murder of Jackson Augustin Rodriguez ... how do you find the defendant ... guilty or not guilty?

Foreman: Guilty[.]

Clerk: As to the charge of attempted first degree murder of Tony Perry ... how do you find the defendant ... guilty or not guilty?

Foreman: Guilty[.]

Clerk: As to the charge of first degree assault of Jackson Augustin Rodriguez ... how do you find the defendant ... guilty or not guilty?

Foreman: Not guilty.

Clerk: As to the charge of second degree assault of Jackson Augustin Rodriguez ... how do you find the defendant ... guilty or not guilty?

Foreman: Not guilty.

Clerk: As to the charge of first degree assault of Tony Perry ... how do you find the defendant ... guilty or not guilty?

Foreman: Guilty[.]

Clerk: As to the charge of use of a handgun in the commission of a crime of violence ... how do you find the defendant ... guilty or not guilty?

Foreman: Guilty[.]

Clerk: As to the charge of wearing, carrying and transporting a handgun ... how do you find the defendant ... guilty or not guilty?

Foreman: Guilty.

After the foreman [announced] the jury's verdict, the clerk of the court hearkened the verdict. The clerk stated:

Ladies and gentlemen of the jury, hearken your verdict as the Court hath recorded it. Your foreman saith that Olusegun Hakeem Ogundipe is guilty of first degree murder of Jackson Augustin Rodriguez on or about July 23, 2006. That Olusegun Hakeem Ogundipe is guilty of attempted first degree murder of Tony Perry on or about July 23, 2006. That Olusegun Hakeem Ogundipe is not guilty of first degree assault of Jackson Augustin Rodriguez on or about July 23, 2006.

That Olusegun Hakeem Ogundipe is not guilty of second degree assault of Jackson Augustin Rodriguez on or about July 23, 2006. And Olusegun Hakeem Ogundipe is guilty of first degree assault of Tony Perry on or about July 23, 2006. That Olusegun Hakeem Ogundipe is guilty of first degree assault of Steven Ramel Broadhead on or about July 23, 2006. That Olusegun Hakeem Ogundipe is guilty of the charge of use of a handgun in the commission of a crime of violence on or about July 23, 2006. And that Olusegun Hakeem Ogundipe is guilty of wearing,

carrying and transporting a handgun on or about July 23, 2006.

And so say you all? If so, please answer, "We do."

After the jury replied, "We do," Ogundipe's counsel requested that the jury be polled. Each juror was asked individually, "[I]s this your individual verdict?" Each responded, "Yes."

*Ogundipe*, 191 Md.App. at 373–76, 991 A.2d at 202–04 (emphasis added).

Once the verdict was announced orally, and the jury was polled and hearkened, the verdict was recorded. Following trial, defense counsel obtained the completed verdict sheet, which listed the charges and the corresponding verdicts:

| Question Number | Question or Instruction | Verdict |
| --- | --- | --- |
| 1 | [First degree murder of Rodriguez] | -x—GUILTY ____ NOT GUILTY |
| | **If your answer to Question 1 is not guilty, please consider Question 2. If your answer to Question 1 is guilty, please answer Question 3.** | |
| 2 | [Second degree murder of Rodriguez] | ____ GUILTY -x—NOT GUILTY |
| 3 | [Attempted first degree murder of Perry] | -x—GUILTY ____ NOT GUILTY |
| | **If your answer to Question 3 is not guilty, please consider Question 4. If your answer to Question 3 is guilty, please answer Question 5.** | |
| 4 | [Attempted second degree murder of Perry] | ____ GUILTY -x—NOT GUILTY |
| 5 | [First degree assault of Rodriguez] | ____ GUILTY -x—NOT GUILTY |
| | **If your answer to Question 5 is not guilty, please consider Question 6. If your answer to Question 5 is guilty, please answer Question 7.** | |
| 6 | [Second degree assault of Rodriguez] | ____ GUILTY -x—NOT GUILTY |
| 7 | [First degree assault of Perry] | -x—GUILTY ____ NOT GUILTY |

If your answer to Question 7 is not guilty, please consider Question 8. If your answer to Question 7 is guilty, please answer Question 9.

| 8 | [Second degree assault of Perry] | ____ GUILTY -x—NOT GUILTY |
| 9 | [First degree assault of Broadhead] | -x—GUILTY ____ NOT GUILTY |

If your answer to Question 9 is not guilty, please consider Question 10. If your answer to Question 9 is guilty, please answer Question 11.

| 10 | [Second degree assault of Broadhead] | ____ GUILTY -x—NOT GUILTY |
| 11 | [Use of a handgun in commission of a crime of violence] | -x—GUILTY ____ NOT GUILTY |
| 12 | [Wearing, carrying, and transporting a handgun] | -x—GUILTY ____ NOT GUILTY |

With regard to the issue on review, we focus on Ogundipe's objection to the contents of the verdict sheet and the failure of the trial court to disclose to counsel the verdict sheet. The trial judge instructed the jury to "consider" the second degree charge if the jury's answer to the corresponding first degree charge was not guilty. Reinforcing this, the language in the verdict sheet instructed the jury, following the charge of first degree murder of Rodriguez, "If your answer to Question 1 is not guilty, please consider Question 2. If your answer to Question 1 is guilty, please answer Question 3," where Question 2 asked the jury to determine whether the defendant was guilty of second degree murder, and Question 3 asked about a separate charge. The same language was employed for the charges of first degree murder of Perry and the first degree assaults of Rodriguez, Perry, and Broadhead. This instruction implies that if the jury finds the defendant guilty of the charge in the first degree, the jury should skip the next question, containing the same charge in the second degree, and should presumably leave that question blank because it merely inquires about the lesser included offense.

The jury did not follow verbatim the trial judge's instructions on how to utilize the verdict sheet; rather than leaving the second degree offenses blank when it determined that

Ogundipe was guilty of the first degree offenses, the jury instead checked the boxes marked "NOT GUILTY." For example, the jury found Ogundipe guilty of the offense listed in Question 1, first degree murder of Rodriguez. Rather than leaving Question 2, second degree murder of Rodriguez, blank, the jury instead checked the box marked "NOT GUILTY." Pursuant to the instructions, however, the clerk did not ask the foreperson to recite the jury verdict for Questions 2, 4, 8, or 10, which contained the lesser included offenses for which the jury found Ogundipe guilty of the greater offenses. Ogundipe appealed the verdict to the Court of Special Appeals, arguing that the trial judge erred in not reading the verdicts for the lesser included offenses and that the verdict sheet constituted an inconsistent verdict. *Ogundipe*, 191 Md.App. at 377, 991 A.2d at 205.

The Court of Special Appeals affirmed the jury's verdict and held:

> The clerk of the court was following the directions of the circuit court by skipping the second degree questions after the jury announced that the defendant was guilty of the charges in the first degree. Once the jury found the defendant guilty of the crimes in the first degree, there was no reason to consider the second degree charges as they legally merged with the greater charges.

*Ogundipe*, 191 Md.App. at 382, 991 A.2d at 207–08. The intermediate appellate court stated that "the verdict sheet itself is a tool for the jury to utilize in deciding its verdict but it does not constitute the verdict" in itself. *Ogundipe*, 191 Md.App. at 381, 991 A.2d at 207. The court concluded that the hearkening and polling of the jury as to the questions which were orally announced "reflected the jury's unanimous verdict," and the verdict was therefore valid. *Ogundipe*, 191 Md.App. at 383, 991 A.2d at 208.

Ogundipe argued, in the alternative, that the verdict sheet was a "communication" under Rule 4–326(d), and he therefore asserted that the Circuit Court erred in failing to disclose the contents of the verdict sheet. The Court of Special Appeals

stated that whether Rule 4–326(d) applies to a jury verdict sheet "appears to be a question of first impression." *Ogundipe*, 191 Md.App. at 384, 991 A.2d at 209. To answer the question, the court consulted the procedure for returning a jury verdict under Rule 4–327,[5] in order to determine whether the proper procedure was followed. *Id.* The court held that Rule 4–327

> does not require the judge to review the verdict sheet or to show the verdict sheet to the defendant at any time during the return of the verdict. Moreover, the jury verdict sheet is not a "communication" from the jury to the court seeking a response by the court. Its purpose is to facilitate the deliberations of the jury.

*Ogundipe*, 191 Md.App. at 385, 991 A.2d at 209. Therefore, the court held, "the [trial] court was not required to notify or disclose the verdict sheet to the parties[.]" *Ogundipe*, 191 Md.App. at 385, 991 A.2d at 209–10. We granted Ogundipe's petition for writ of certiorari. *Ogundipe v. State*, 415 Md. 40, 997 A.2d 791 (2010).

## DISCUSSION

The question presented in the petition for writ of certiorari encompasses two separate issues. First, in addressing Ogundipe's claim that there was an inconsistent or confusing verdict, we will discuss whether the signed verdict sheet constituted the jury's verdict. Second, we will address whether the

---

5. Rule 4–327 provides, in pertinent part:

 (a) **Return.** The verdict of a jury shall be unanimous and shall be returned in open court.

 * * * * * *

 (d) **Two or more counts.** When there are two or more counts, the jury may return a verdict with respect to a count as to which it has agreed, and any count as to which the jury cannot agree may be tried again.

 (e) **Poll of jury.** On request of a party or on the court's own initiative, the jury shall be polled after it has returned a verdict and before it is discharged. If the sworn jurors do not unanimously concur in the verdict, the court may direct the jury to retire for further deliberation, or may discharge the jury if satisfied that a unanimous verdict cannot be reached.

verdict sheet was a "communication" which was required to be disclosed under Maryland Rule 4–326(d).

In order to determine whether a verdict sheet constitutes the jury's verdict, we first turn to *Jones v. State*, 384 Md. 669, 866 A.2d 151 (2005). In *Jones*, four counts against the defendant relating to a robbery were submitted to the jury. *Jones*, 384 Md. at 675, 866 A.2d at 154–55. After deliberations, when the jury returned to the courtroom, the courtroom clerk asked the foreperson for the verdict on three of the four counts, and the foreperson answered "guilty" on each of those three counts. *Jones*, 384 Md. at 675–76, 866 A.2d at 155. The jury was then polled and the verdict was hearkened only as to the three counts. *Jones*, 384 Md. at 676–77, 866 A.2d at 155. The clerk never inquired about the fourth count. *Id.* The completed verdict sheet, however, reflected that the jury marked Jones guilty on all four counts. *Jones*, 384 Md. at 676 n. 9, 866 A.2d at 155 n. 9. The verdict sheet was filed in the record, *Jones*, 384 Md. at 675 n. 9, 866 A.2d at 155 n. 9, and Jones was later sentenced for all four counts. *Jones*, 384 Md. at 677, 866 A.2d at 156.

On appeal, Jones argued that the verdict as to the count that was not orally conveyed, polled, or hearkened "should not stand because the jury foreman did not announce the guilty verdict in open court." *Id.* We agreed with Jones, reversing the Court of Special Appeals, which held that "substance will prevail over form even if the guilty verdict is not announced[.]" *Id.* We held that a verdict is not valid until orally conveyed and either polled or hearkened. *Jones*, 384 Md. at 678, 866 A.2d at 156. In reaching this conclusion, we reviewed the historic procedures for returning a verdict, and we stated that the " 'return' of a verdict by a jury has been comprised of three distinct procedures, each fulfilling a specific purpose." *Jones*, 384 Md. at 682, 866 A.2d at 159. First, the foreman orally answers the inquiry of the clerk, stating the verdict of the jury in open court. *Id.* (citation omitted). Second, the jury is polled "to ensure the unanimity of the verdict prior to its entry on the record." *Id.* (citing *Smith v. State*, 299 Md. 158, 166, 472 A.2d 988, 992 (1984)). Third, the jury is heark-

ened to its verdict as a " 'traditional formality announcing the recording of the verdict.' " *Jones*, 384 Md. at 684, 866 A.2d at 160 (quoting *Smith*, 299 Md. at 166, 472 A.2d at 991). We noted that hearkening and polling are conducted to " 'secure certainty and accuracy, and to enable the jury to correct a verdict, which they have mistaken, or which their foreman has improperly delivered.' " *Id.* (quoting *Smith*, 299 Md. at 165, 472 A.2d at 991). Turning to the issue before us in *Jones*, we held that "for a verdict to be considered final in a criminal case it must be announced orally," and thus the verdict for the count which was not announced orally, polled, or hearkened, was not valid. *Jones*, 384 Md. at 685–86, 866 A.2d at 160–61.

Subsequently, in *State v. Santiago*, 412 Md. 28, 40, 985 A.2d 556, 562 (2009), we reaffirmed the procedure outlined in *Jones*. In *Santiago*, the foreperson stated the verdict for multiple charges in open court, but the jury was not polled and the verdict was not hearkened. *Santiago*, 412 Md. at 33–34, 985 A.2d at 559. We held that "the clerk's failure to hearken the verdict was fatal and rendered the jury's verdict defective. . . . The failure to hearken the verdict rendered the verdict a nullity." *Santiago*, 412 Md. at 41–42, 985 A.2d at 563; *see also Heinze v. State*, 184 Md. 613, 616, 42 A.2d 128, 130 (1945) ("It is a fundamental principle that the verdict of a jury in a criminal case has no effect in law until it is recorded and finally accepted by the court.").

In the present case, while Ogundipe focuses his argument on whether or not the verdict sheet was a communication, Ogundipe also implies that the verdict sheet itself was the verdict, referring to the verdict sheet as "the ultimate communication," and arguing that a "large portion of the verdict . . . went unspoken and unaddressed[.]" Ogundipe claims that the contents of the verdict sheet constituted "evidence of confusion, inconsistency, and potential acquittal[.]" Ogundipe also maintains that the verdict sheet evidenced an inconsistent verdict, stating that the "verdict sheet shows Petitioner not guilty of lesser included offenses and guilty of the greater offenses as they pertain to each victim in the case."

The State argues that Ogundipe's contention that a part of the verdict went unspoken is unavailing because in Maryland "there is no such thing as an 'unspoken' verdict." The State relies on *Jones* and *Santiago*, asserting that the verdict, which was "delivered in open court, about which the jury was polled, and to which the jury hearkened," constitutes the entire verdict, rather than the contents of the verdict sheet. Further, the State contends that the jury did not express "confusion, inconsistency, or ambiguity during the announcement, polling, or hearkening of the verdict." Thus, the verdict, as announced in open court, was comprised of only those questions that were answered by the foreperson, and the jurors were hearkened and polled in accordance with *Jones*.

Although this Court has not had occasion to specifically determine whether the verdict sheet itself constitutes the verdict of the jury, other jurisdictions have grappled with this exact issue and have determined that it does not. For example, two cases decided by the Appellate Division of the Supreme Court of New York are directly on point. In *People v. Clark*, 293 A.D.2d 624, 624, 742 N.Y.S.2d 70 (N.Y.App.Div. 2002), the trial court instructed the jury to consider the second degree charge only if it first found the defendant not guilty of the first degree charge. The verdict sheet revealed that the "jury had checked 'guilty' next to the charge of manslaughter in the first degree, and 'not guilty' next to the charge of manslaughter in the second degree," in violation of the court's instructions. *Id.* The defendant claimed that the verdict manifested the "jury's confusion" and that the trial court's failure to apprise defense counsel of the error deprived the defendant of due process of law. *Clark*, 293 A.D.2d at 625, 742 N.Y.S.2d 70. The appellate court affirmed the judgment, holding that the verdict sheet did not constitute the verdict of the jury and, therefore, the court did not err in accepting the guilty verdict as it was conveyed. *Id.* Similarly, in *People v. Boatwright*, 297 A.D.2d 603, 748 N.Y.S.2d 541 (N.Y.App.Div.2002), the appellate court held that the trial court

had no sua sponte obligation to inform [the] defendant that the verdict sheet, contrary to the court's instructions, also

contained a notation by the jury indicating a proposed not guilty verdict on the lesser included offense of second-degree assault. A verdict sheet is neither a verdict nor a substantive communication from the jury.

*Boatwright*, 297 A.D.2d at 604, 748 N.Y.S.2d 541 (internal citations omitted).

■■■ Therefore, although this Court has not previously determined the precise issue presented by Ogundipe for review, we are persuaded by the logic of other courts on the matter, and we believe that *Jones* and *Santiago* support the holding that the contents of the verdict sheet do not constitute the jury's verdict. We agree with the Court of Special Appeals "that the verdict sheet itself is a tool for the jury to utilize in deciding its verdict but it does not constitute the verdict." *Ogundipe*, 191 Md.App. at 381, 991 A.2d at 207. As framed by the intermediate appellate court:

Ogundipe, in effect, is asking, if a jury is directed by the court not to answer a question related to the second degree of a crime when the jury finds the defendant guilty of that crime in the first degree, is the clerk of the court required to ask the jury for its answer to those questions once the jury announces, in open court, that it finds the defendant guilty of the crimes in the first degree? In our view, the answer is, "No." The clerk of the court was following the directions of the circuit court by skipping the second degree questions after the jury announced that the defendant was guilty of the charges in the first degree. Once the jury found the defendant guilty of the crimes in the first degree, there was no reason to consider the second degree charges as they legally merged with the greater charges.

*Ogundipe*, 191 Md.App. at 382, 991 A.2d at 207–08. We held in *Jones* that the verdict on the fourth count was not valid because it was not orally announced in court. Similarly, in the present case, any questions on the verdict sheet that were not announced orally in court cannot be considered verdicts in themselves. The verdict sheet is merely a tool used to aid the

jury in reaching its verdict; it therefore does not bind the jury or the court to its contents.

The verdict sheet also did not evidence any confusion by the jury as to the charges. The instructions directed the jury to "consider" the second degree offense if the jurors found the defendant not guilty of the corresponding first degree offense, but the instructions did not specifically direct the jurors to skip the question entirely if they found the defendant guilty of the greater offense. The jury's marking of "not guilty" for the second degree charges, for which the jury found Ogundipe guilty of the corresponding first degree charges, emphasized the jury's intent to convict Ogundipe of the greater offenses. Nonetheless, the courtroom clerk acted properly and in accordance with the judge's instructions by skipping Questions 2, 4, 8, and 10, relating to those corresponding lesser included offenses, and by reading aloud only that the jury found Ogundipe guilty of the greater offenses. Finally, had the jurors intended a different result, they could have made their objections known during the polling or hearkening.

Now that we have determined that the verdict sheet itself is not the verdict, we must address whether the verdict sheet is instead a communication within the purview of Maryland Rule 4–326(d) that should have been disclosed. We shall hold that a verdict sheet is not a "communication" within the plain meaning and intent of the law, and therefore the trial judge did not err in failing to disclose the contents of the verdict sheet.

In order to determine whether a verdict sheet is the type of communication contemplated by Rule 4–326(d), "we look first to the plain language of the statute [or Rule]" to determine legislative intent. *Perez v. State*, 420 Md. 57, 63, 21 A.3d 1048, 1052 (2011) (quoting *Dove v. State*, 415 Md. 727, 738, 4 A.3d 976, 982 (2010)). Further, as stated in *Briggs v. State*, 413 Md. 265, 992 A.2d 433 (2010), " '[we] neither add nor delete language so as to reflect an intent not evidenced in the plain language of the [rule]; nor [do we] construe the [rule] with forced or subtle interpretations that limit or extend its

application.' " *Briggs,* 413 Md. at 275, 992 A.2d at 439 (quoting *Rosemann v. Salsbury, Clements, Bekman, Marder & Adkins, LLC,* 412 Md. 308, 315, 987 A.2d 48, 52 (2010)).

 We have held consistently that, pursuant to Rule 4–326(d), a court must disclose "any communication from the jury pertaining to the action." The purpose of this Rule is to provide "an opportunity for input in designing an appropriate response to each question in order to assure fairness and avoid error." *Perez,* 420 Md. at 64, 21 A.3d at 1053 (quoting *Smith v. State,* 66 Md.App. 603, 624, 505 A.2d 564, 574 (1986), *cert. denied,* 306 Md. 371, 509 A.2d 134 (1986)). In *Denicolis v. State,* 378 Md. 646, 837 A.2d 944 (2003), we discussed Rule 4–326(c) [6] in detail, stating that "an accused in a criminal prosecution has the absolute right to be present at every stage of trial from the time the jury is impaneled *until it reaches a verdict* or is discharged[.]" *Denicolis,* 378 Md. at 656, 837 A.2d at 950 (emphasis added) (citing *Midgett v. State,* 216 Md. 26, 36–37, 139 A.2d 209, 214 (1958)). Any failure of the trial court to disclose a communication under Rule 4–326(d) is evaluated under the harmless error standard and will not be considered harmless "unless the record affirmatively shows that such communications were not prejudicial or had no tendency to influence the verdict of the jury." *Id.* (quotation omitted).

Ogundipe argues that he was denied the right to be present at every stage of the trial. Ogundipe claims that he was not "present" for the verdict because he did not have knowledge of the contents of the verdict sheet; he therefore concludes that a "large portion of the verdict … went unspoken and unaddressed[.]" Ogundipe contends that if he "had the knowledge that there were not guilty findings for lesser included offenses, his counsel could have requested the trial court not to accept the verdict and to send the jury back for further deliberation, or asked for other action to protect [his] rights." Ogundipe

---

6. Current Md. Rule 4–326(d) was previously Md. Rule 4–326(c). Md. Rule 4–326 was amended, effective in 2003, to include a new section (a) and was re-designated accordingly.

also argues that the Court of Special Appeals "ignored the plain reading of Rule 4–326," under which, in his view, a verdict sheet would be considered a communication that must be disclosed by the court. Ogundipe faults the intermediate appellate court for relying on Rule 4–327 in outlining the procedure for returning a jury verdict, arguing that the court should only have evaluated whether the verdict sheet was a communication under Rule 4–326.

The State counters that Ogundipe's contention that the verdict sheet was a communication is "without merit" because the "verdict sheet is not the type of communication contemplated by [the plain language of] Rule 4–326(d)." The State presents two reasons supporting its conclusion that verdict sheets are not within the purview of Rule 4–326. First, the State asserts that the language of the Rule requires the court to notify the parties upon receipt of a communication, which implies that the parties would likely be otherwise unaware of the communication. According to the State, however, the submission of a verdict sheet "is done in open court, in the presence of all both parties, who have been given prior notice that the jury has reached a verdict"; therefore, both parties and the court are aware of the submission of the verdict sheet. Second, the State contends that Rule 4–326(d) requires notification to the parties of the receipt of a jury communication prior to the court's response, which assumes, according to the State, that a communication requires a response of some kind by the court. The State argues that a verdict sheet does not require such notification because a verdict sheet does not require a response from the court. Rather, the verdict sheet is used by the jury and the foreman to convey the jury's conclusions in the case, and thus it does not seek a response. The Court of Special Appeals agreed with the State, indicating that the purpose of the verdict sheet is that of a tool used "to facilitate the deliberations of the jury," and it is therefore not a communication requiring disclosure. *Ogundipe*, 191 Md. App. at 385, 991 A.2d at 209.

In the present case, the plain language of Rule 4–326(d) compels the conclusion that the verdict sheet is not the type of communication contemplated by the Rule. In accordance with *Briggs*, we will not construe the Rule with forced or subtle interpretations that extend its application. *See Briggs*, 413 Md. at 275, 992 A.2d at 439. As we have previously held, the purpose of Rule 4–326(d) is to ensure that the parties have an opportunity to provide input before the court responds to a communication. Unlike communications received by the court during the presentation of evidence or during deliberation, a verdict sheet does not require input from counsel or from the court. Accordingly, we agree with the Court of Special Appeals that the verdict sheet is merely a tool for the jury to use in order to aid in its deliberation, rather than a communication requiring action by the court or by counsel. Thus, the verdict sheet is not a communication requiring disclosure under Rule 4–326(d). Further, the Court of Special Appeals did not err in referencing Rule 4–327, which governs the return of a jury verdict and requires that the jury return a unanimous verdict in open court, in evaluating whether the trial court followed the proper procedure in receiving the jury's verdict. To be clear, Rule 4–326(d) governs any communication received up until the time when the jury returns its verdict; once the jury has concluded its deliberations and returns to the courtroom to deliver its verdict, Rule 4–327 is triggered, and the court must follow the specific procedure outlined therein to render the verdict.

Additionally, Ogundipe's reliance on *Denicolis* to support his contention that the verdict sheet is a communication that should have been disclosed is misplaced. Although *Denicolis* does emphasize the importance of Rule 4–326 and clearly requires disclosure of any communication between the jury and the court, the case does not support the claim that a verdict sheet is a communication. Rather, a closer reading of *Denicolis* reveals that a verdict sheet is not a "communication" as contemplated by the Rule. First, *Denicolis* applies the Rule to any communications received "until [the jury] reaches a verdict or is discharged[.]" *Denicolis*, 378 Md. at 656, 837

A.2d at 950. Second, when discussing the harmless error standard, *Denicolis* focuses on the potential influence the error would have on the verdict of the jury. *Denicolis,* 378 Md. at 657, 837 A.2d at 950. Thus, *Denicolis* contemplates those communications that take place up to and until the time when the jury reaches a verdict, not after the jury completes its deliberations and returns to the courtroom to announce the verdict. In a situation where the verdict sheet contains the jury's final determination on each count, the jury has already reached its verdict and is simply using the verdict sheet as a tool to help deliver its decision to the court. Finally, those other courts that held that the verdict sheet does not constitute the verdict also agree that the verdict sheet is not a communication. *See Clark,* 293 A.D.2d at 625, 742 N.Y.S.2d 70 (holding that the verdict sheet need not be disclosed to counsel because it is not "a jury communication requesting information or instruction") (internal quotation omitted); *Boatwright,* 297 A.D.2d at 604, 748 N.Y.S.2d 541 ("A verdict sheet is neither a verdict nor a substantive communication from the jury."). Therefore, we affirm the judgment of the Court of Special Appeals in holding that the Circuit Court did not err in failing to disclose the contents of the verdict sheet to defense counsel because the verdict sheet was neither a verdict in itself nor a communication under Rule 4–326(d).

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED. PETITIONER TO PAY THE COSTS.**

BELL, C.J., dissents.

BELL, C.J., dissenting.

### I.

This case presents the question whether the communications referenced in Md. Rule 4–326(d),[1] which requires a trial

---

1. Md. Rule 4–326(d) provides:
 "Communications with jury. The court shall notify the defendant and the State's Attorney of the receipt of any communication from

court to notify counsel of all communications received from the jury, include a signed verdict sheet, which, upon receipt and prior to accepting the verdict or discharging the jury, the court must disclose to a criminal defendant or his counsel. The majority, agreeing with the Court of Special Appeals, holds that a verdict sheet cannot be considered a "communication" within the meaning of Rule 4–326(d) and, therefore, the trial court did not commit reversible error in failing to disclose it and its contents to the defendant or his counsel. *Ogundipe v. State*, 73–74, 33 A.3d at 992–93 (2011). Under the circumstances of this case, I disagree.

A jury sitting in the Circuit Court for Washington County found the petitioner, Olusegun Ogundipe, guilty of first degree murder, attempted first degree murder, two counts of first degree assault, use of a handgun during the commission of a crime of violence, and wearing, carrying, and transporting a handgun. The instructions given the jury and the circumstances surrounding the taking of its verdict provide the predicate for the issue this Court must resolve. To assist it in its deliberations and to record its verdict, the jury was given a verdict sheet containing twelve questions. In his instructions to the jury, the trial judge explained the composition of the verdict sheet and related the twelve questions to the charges against the petitioner, and addressed the consequences of the answer on other questions and charges. Thus, in that regard, the jury was instructed:

"Questions One and Two relate to the charges of first and second degree murder of Jackson Rodriguez. Question One is: As to the charge of first degree murder of Jackson Augustin Rodriguez, on or about July twenty-three 2006, how do you find the defendant Olusegun Hakeem Ogundipe, guilty or not guilty?

the jury pertaining to the action as promptly as practicable and in any event before responding to the communication. All such communications between the court and the jury shall be on the record in open court or shall be in writing and filed in the action. The clerk or the court shall note on a written communication the date and time it was received from the jury."

"You're given further instruction then: If your answer to that question would be not guilty, then I would ask you to consider Question Number Two, which is second degree murder of Jackson Rodriguez.

"After you have done that, then Question Three and Four relate to the attempted first and second degree murder of Tony Perry. You would consider first degree murder. If your answer to that would be not guilty then you would consider attempted second degree murder of Tony Perry.

"Questions Five and Six relate to the first degree assault of Jackson Rodriguez. Using the same means of analysis, Questions Seven and Eight relate to the first and second degree assault of Tony Perry. And Questions Nine and Ten relate to the first and second degree assault of Steven Broadhead.

"Question Eleven relates to the charge of the use of a handgun in the commission of a crime of violence. I would ask you to once again consider the instructions that were given. Before you consider that question and the last question is as to the charge of wearing and carrying and transporting a handgun. How do you find the defendant, guilty or not guilty?

"Once again, I would remind you that your decision must be unanimous. In other words, all twelve of you must agree."

Notwithstanding these detailed instructions, the verdict sheet was completed inconsistently with the instructions, suggesting, if not reflecting, a misunderstanding of those instructions. With respect to the charges of first degree murder, first degree assault, use of a handgun in commission of a crime of violence, and wearing, carrying and transporting a handgun, the jury answered "guilty." Contrary to the court's instructions, however, it went on to answer, "not guilty," to the subsequent questions addressing second degree murder, and second degree assault, lesser degrees of two of the above offenses.

**80**

Thereafter, with the defendant present, the verdict was taken, as required by Maryland Rule 4–327,[2] in open court. In that regard, the following exchange occurred between the clerk and the jury:

"The Court: Okay. Mr. Clerk, if you would take the verdict of the jury, please.

"Clerk: Yes, sir. Ladies and gentlemen of the jury, are you agreed as to your verdict? If so, please answer, "We are."

"Jury: We are.

"Clerk: Who shall say for you?

"Jury: Our foreman.

"Clerk: Please stand. As to the charge of first degree murder of Jackson Austin Rodriguez . . . how do you find the defendant . . . guilty or not guilty?

"Foreman: Guilty.

---

2. Maryland Rule 4–327 states:

(a) Return. The verdict of a jury shall be unanimous and shall be returned in open court.

(b) Sealed verdict. With the consent of all parties, the court may authorize the rendition of a sealed verdict during a temporary adjournment of court. A sealed verdict shall be in writing and shall be signed by each member of the jury. It shall be sealed in an envelope by the foreperson of the jury who shall write on the outside of the envelope "Verdict Case No. . . . . . . . . ." "State of Maryland vs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ." and deliver the envelope to the clerk. The jury shall not be discharged, but the clerk shall permit the jury to separate until the court is again in session at which time the jury shall be called and the verdict opened and received as other verdicts.

(c) Two or more defendants. When there are two or more defendants, the jury may return a verdict with respect to a defendant as to whom it has agreed and any defendant as to whom the jury cannot agree may be tried again.

(d) Two or more counts. When there are two or more counts, the jury may return a verdict with respect to a count as to which it has agreed, and any count as to which the jury cannot agree may be tried again.

(e) Poll of jury. On request of a party or on the court's own initiative, the jury shall be polled after it has returned a verdict and before it is discharged. If the sworn jurors do not unanimously concur in the verdict, the court may direct the jury to retire for further deliberation, or may discharge the jury if satisfied that a unanimous verdict cannot be reached.

"Clerk: As to the charge of attempted first degree murder of Tony Perry ... how do you find the defendant ... guilty or not guilty?

"Foreman: Guilty.

"Clerk: As to the charge of first degree assault of Jackson Austin Rodriguez ... how do you find the defendant ... guilty or not guilty?

"Foreman: Not guilty.

"Clerk: As to the charge of second degree assault of Jackson Austin Rodriguez ... how do you find the defendant ... guilty or not guilty?

"Foreman: Not guilty.

"Clerk: As to the charge of first degree assault of Tony Perry ... how do you find the defendant ... guilty or not guilty?

"Foreman: Guilty.

"Clerk: As to the charge of use of a handgun in the commission of a crime of violence ... how do you find the defendant ... guilty or not guilty?

"Foreman: Guilty.

"Clerk: As to the charge of wearing, carrying and transporting a handgun ... guilty or not guilty?

"Foreman: Guilty."

*Ogundipe v. State*, 191 Md.App. 370, 375–76, 991 A.2d 200, 203–04. Rather than ask each question to which an answer was given, however, the clerk of the court only asked the jury for its verdict, and hearkened those verdicts, with respect to those offenses as to which the jury indicated a verdict of "guilty" or there was no inconsistency—the jury found the petitioner "not guilty" of both first and second degree assault of Rodriguez. Thus, The clerk did not ask for the jury's verdict with respect to questions Two, regarding the second degree murder of Austin Rodriguez, Four, attempted second degree murder of Tony Perry, Eight, second degree assault of Tony Perry, or Ten, second degree assault of Steven Broad-

head. The jury had marked these questions, "not guilty." The verdict of the jury was then hearkened, as follows:

"Ladies and gentlemen of the jury, hearken your verdict as the Court hath recorded it. Your foreman saith that Olusegun Hakeem Ogundipe is guilty of first degree murder of Jackson Augustin Rodriguez on or about July 23, 2006. That Olusegun Hakeem Ogundipe is guilty of attempted first degree murder of Tony Perry on or about July 23, 2006. That Olusegun Hakeem Ogundipe is not guilty of first degree assault of Jackson Augustin Rodriguez on or about July 23, 2006.

"That Olusegun Hakeem Ogundipe is not guilty of second degree assault of Jackson Augutin Rodriguez on or about July 23, 2006. And Olusegun Hakeem Ogundipe is guilty of first degree assault of Tony Perry on or about July 23, 2006. That Olusegun Hakeem Ogundipe is guilty of first degree assault of Steven Ramel Broadhead on or about July 23, 2006. That Olusegun Hakeem Ogundipe is guilty of the charge of use of a handgun in the commission of a crime of violence on or about July 23, 2006. And that Olusegun Hakeem Ogundipe is guilty of wearing, carrying and transporting a handgun on or about July 23, 2006.

"And so say you all? If so, please answer, "We do."

*Id.,* 191 Md.App. at 376, 991 A.2d at 204. The jury responded in the affirmative, and, upon being individually polled at the request of defense counsel, confirmed that they each, indeed, had arrived at this verdict unanimously. The jury was then dismissed. At no time prior to its dismissal was it revealed that the jury had inconsistently completed the verdict sheet. Judgment was entered consistent with the verdict rendered in open court and the petitioner subsequently was sentenced to life imprisonment plus an additional ten years.

The petitioner learned of the inconsistencies on the verdict sheet days after the trial, *id.,* whereupon, after filing a motion for modification which was held *sub-curia* by the trial court, he challenged the verdict, in particular, the process by which the verdict was taken. He argued that the verdict sheet

constituted a "communication," within the meaning of Rule 4–326(d), which, therefore, was required to be disclosed to counsel. The trial court disagreed, as did the Court of Special Appeals, to which the petitioner noted an appeal. The intermediate appellate court held that the presiding trial judge is neither required "to review the verdict sheet, [n]or to show the verdict sheet to the defendant during the return of the verdict," and further, that "the jury sheet is not a 'communication' from the jury to the court seeking a response by the court." *Ogundipe,* 191 Md.App. at 385, 991 A.2d at 209–10. It relied, in part, on Maryland Rule 4–327, *supra,* note 2, which governs the procedure for returning a jury verdict, stating that it "does not require the judge to review the verdict sheet or to show the verdict sheet to the defendant at any time during the return of the verdict." *Id.,* 191 Md.App. at 385, 991 A.2d at 209.

The majority affirms the decision of the Court of Special Appeals. *Ogundipe,* 61–62, 33 A.3d at 985–86. It holds that a verdict sheet does not come within the meaning of "communication" as used in Rule 4–326(d). *Id.,* 73–74, 33 A.3d at 992–93. That this is so, the majority says, is demonstrated by the plain language of, as well as by the intent underlying, the Rule. *Id.,* 74–76, 33 A.3d at 993–94. The majority relies on *Denicolis v. State,* 378 Md. 646, 837 A.2d 944 (2003). There, we addressed the purpose of Rule 4–326(d), concluding that it is to allow parties the opportunity to provide input before the court responds to a communication. *Id.,* 378 Md. at 656, 837 A.2d at 950. It follows, the majority states, looking to the plain language of the Rule and noting that a verdict sheet does not require input from counsel or the court, *Ogundipe,* 75–76, 33 A.3d at 994, that a verdict sheet cannot be the sort of communication contemplated by 4–326(d). Moreover, according to the majority, agreeing with the intermediate appellate court, since a "verdict sheet itself is a tool for the jury to utilize in deciding its verdict," *id.,* 72, 33 A.3d at 992 quoting 191 Md.App. at 381, 991 A.2d at 207, the contents of a verdict sheet do not evince a final verdict. *Ogundipe,* 72–73, 33 A.3d at 992. It reasons further that the verdict sheet, as it was

completed by the jurors, did not reflect or demonstrate any confusion, since the trial court did not specifically instruct the jurors to skip those questions regarding the lesser included offenses of which the petitioner was found not guilty. *Id.,* 72–73, 33 A.3d at 992. The majority finally is satisfied that the courtroom clerk acted properly in skipping the questions related to those lesser included offenses. *Id.,* 72–73, 33 A.3d at 992. Accordingly, it holds that the trial court did not commit error and, thus, that the petitioner's convictions must be upheld. *Id.,* 76–77, 33 A.3d at 994–95.

I agree that it is unnecessary for this Court to look beyond the plain meaning of Rule 4–326(d) to resolve the question this case presents. I do not agree, however, with the conclusion it reaches upon conducting the plain meaning analysis. I believe, on the contrary, that the plain language of Rule 4–326(d) requires, without exception, that *"any communication from a jury pertaining to the action"* be disclosed to counsel. (Emphasis added). Accordingly, I dissent.

## II.

The question before us for resolution is:

"Whether there is a duty of the trial court to disclose a signed verdict sheet to a defendant or his counsel before the jury is discharged when that verdict sheet has been completed in violation of the trial court's instructions, which verdict sheet evidences an inconsistent verdict, confusion and/or possible acquittal, and which verdict sheet was only partially covered during oral pronouncement of the verdict by the jury?"

As a threshold matter, the majority elects to address only that portion of the question that asks whether disclosure is required. 60, 33 A.3d at 985 n. 1. It reasons that the second portion, questioning the accuracy of the verdict sheet, is based on an underlying assertion which was not accepted by the Court of Special Appeals and, thus, is irrelevant, and improp-

er. *Id.,* 61, 33 A.3d at 985. As I will demonstrate, this approach is unwarranted. Indeed, by taking this approach, the majority ignores a key part of the issue on which we granted certiorari. As a result, it fails to provide a complete response to the issue we agreed to resolve.

Turning first to the question of the nature of a verdict sheet, we look for guidance, first, to the language of Maryland Rule 4–326(d). It provides:

"The court shall notify the defendant and the State's Attorney of the receipt of any communication from the jury pertaining to the action as promptly as practicable and in any event before responding to the communication. All such communications between the court and the jury shall be on the record in open court or shall be in writing and filed in the action. The clerk or the court shall note on a written communication the date and time it was received from the jury."

In construing a court rule, as in the case of a statute, *see Pickett v. Sears, Roebuck & Co.,* 365 Md. 67, 78, 775 A.2d 1218, 1224 (2001), *Johnson v. State,* 360 Md. 250, 264, 757 A.2d 796, 804 (2000), we "begin[ ] with the plain language of the statute," and look to "ordinary, popular understanding of the English language [to] dictate[ ] interpretation of its terminology." *Kushell v. Dep't of Natural Res.,* 385 Md. 563, 576, 870 A.2d 186, 193 (2005). It is important, in so doing, that we "neither add nor delete language so as to reflect an intent not evidenced in the plain language of the statute; nor construe the statute with forced or subtle interpretations that limit or extend its application." *Id.,* 385 Md. at 566–77, 870 A.2d at 193. "If statutory language is unambiguous when construed according to its ordinary and everyday meaning, then we give effect to the statute as it is written." *Id.,* 385 Md. at 577, 870 A.2d at 193. Specifically, "[i]f there is no ambiguity in that language, either inherently or by reference to other relevant laws or circumstances, ... we do not need to resort to the various, and sometimes inconsistent, external rules of construction, for the Legislature is presumed to have meant what it said and said what it meant." *Arundel Corp. v. Marie,* 383 Md. 489,

502, 860 A.2d 886, 894 (2004) (quoting *Witte v. Azarian,* 369 Md. 518, 525, 801 A.2d 160, 165 (2002)) (internal quotation marks omitted). Applying these principles of construction to the interpretation of Rule 4–326(d) makes clear that a verdict sheet is a "communication" within its ambit.

Rule 4–326(d) references "any communication received from the jury pertaining to the action." It requires, without further defining "communication" or making any exception, that such communications be disclosed to counsel "as promptly as practicable and in any event before responding to the communication." To decide whether a jury verdict comes within the Rule, it is necessary, therefore, that we determine the meaning of "communication," and "pertains." Looking to the ordinary usage of the language in question, as we are instructed by the canons of construction to do, *Kushell, supra,* we find that the Merriam–Webster Dictionary defines a "communication" as "information communicated"; "a verbal or written message." MERRIAM-WEBSTER DICTIONARY 100 (3d ed. 2005). To "communicate", according to Merriam–Webster, is "to convey knowledge of or information about: make known." *Id.*

The word, "pertain", as it is used in Rule 4–326(d), is defined in the Merriam–Webster dictionary as, "to have reference." *Id.* at 370, 870 A.2d 186. A verdict sheet certainly "ha[s] reference" to the action at hand. It is, in fact, as characterized by the petitioners, "the ultimate communication." While it is not really the ultimate communication with regard to the case, it is, at that moment, the most critical communication concerning the issues to be decided that the jury could make. As such, it meets and far exceeds the requirement of simply referencing the action. Concluding otherwise, in light of the plain language of the Rule, is illogical.

A verdict sheet, containing the jury's findings, albeit required by, and in response to, the court's instructions, on its face, is a communication and it very clearly pertains to the case. It is the encapsulation, in written form, of the result of the jury's deliberations. Specifically, it apprises the court of

the jury's findings, following deliberations, on the factual issues of a case, to be subsequently announced in open court. See BLACK'S LAW DICTIONARY 1696 (9th ed. 2009). The jury verdict indubitably "convey[s] knowledge of or information about" the case and the jury's findings, Merriam–Webster, *supra;* it "makes known" those findings. *Id.* Rule 4–326(d) does not limit or even address how, by whom, or with what purpose a "communication" may be initiated. Indeed, and therefore, it clearly does not exclude jury verdicts. This is clear on the face of the Rule.

Nor does the existence of Rule 4–327, pertaining to jury verdicts, suggest or require a different conclusion. That Rule does not require that verdicts be recorded on verdict sheets, thus creating a separate and distinct communication device for the taking of a verdict. Like Rule 4–326, Rule 4–327 recognizes that the communication of the verdict, like the communication of a jury question, can be oral, in which case it must occur in open court, on the record. The Rule requires only that "[t]he verdict of a jury shall be unanimous and shall be returned in open court." Rule 4–327(a). And there is, contrary to the majority's assertion, a response, or several responses, required of the court: polling of the jury, see Rule 4–327(d), hearkening of the verdict and discharge of the jury. To hold that the plain meaning of 'communication' does not encompass a verdict sheet requires that we construe Rule 4–326(d) "with forced or subtle interpretations that limit ... its application." *Kushell v. Dep't of Natural Res.,* 385 Md. at 576–77, 870 A.2d at 193. But that is precisely what the majority does.

That it is so clear, from the face of Rule 4–326(d) alone, that a verdict sheet is a communication that pertains to an action, renders the majority's opposite conclusion all the more inexplicable. More notable, our cases involving Rule 4–326(d), and its underpinnings, buttress the conclusion that a verdict sheet is a communication that must be disclosed to counsel. Our prior analyses of Rule 4–326(d) have occurred, to be sure, only in the context of jury communications, originating with the jury, during deliberations, requiring a response from the trial

court, *see Denicolis,* 378 Md. 646, 837 A.2d 944; *Stewart v. State,* 334 Md. 213, 638 A.2d 754 (1994); however, contrary to what the majority suggests, 75–76, 33 A.3d at 994, we have never held that the reach of Rule 4–326(d) does not extend beyond those circumstances.

We discussed the purpose of the Rule 4–326(d) requirements in *Denicolis v. State,* 378 Md. at 656, 837 A.2d at 950, where we recognized, *inter alia,* that the Rule sought to safeguard "the Constitutional and common law right of a criminal defendant to be present at every critical stage of trial." Citing *Midgett v. State,* 216 Md. 26, 36–37, 139 A.2d 209, 214 (1958), we again emphasized the principle, consistently adhered to by this Court, that "an accused in a criminal prosecution has the absolute right to be present at *every* stage of trial from the time the jury is impaneled until it reaches a verdict or is discharged," and further, that "any communications whatsoever between the court and the jury" must be conducted in the presence of the defendant. *Denicolis,* 378 Md. at 656, 837 A.2d at 950 (emphasis added). It is significant, and telling, that the reference is to "any communication," rather than to one that requires a response from the court. Surely, the fact that a communication does not seek a direct response from the court or require input from counsel does not make it any less critical to the outcome of the trial. Nor should it automatically undermine a defendant's right to be present and, more important, be privy to the information it conveys, all of it.

It is not enough simply to be present. The right to be present means nothing, is but a show, if all information is not available to all parties. When the jury verdict is announced in open court orally, the parties are on the same field; they have all the available information.[3] That is not the case when the jury verdict is written and not all of what the jury wrote is

---

3. The equivalent to this situation in an oral verdict situation would be if the judge or the clerk had been apprised of the unreadiness of a juror, which was not disclosed when the verdict was taken because the juror did not him or herself disclose.

shared. To be sure, a defendant well may be physically present when the jury verdict is taken, but if he is not given access to information on that written verdict sheet that may undermine the verdict announced and that may be used to explore that possibility, his right to be present will be rendered hollow.[4] Had the petitioner been aware of how the verdict sheet was completed, he could have, and I expect, would have asked the court to voir dire the jury on the point and, perhaps, sought to present a case for mistrial. The point is that the petitioner was not playing on a level playing field.[5]

Furthermore, contrary to what the majority suggests and would be the result of this decision, this right to be present does not expire immediately at the conclusion of the jury's deliberations; it persists until the jury has been discharged from its duties, *after* the reading of the verdict in open court, the polling of the jury and the hearkening of the verdict. *See Midgett, supra.* In *Denicolis, supra,* we also explained, relying on *Stewart,* 334 Md. at 225, 638 A.2d at 759 (1994), that "this right is absolute and that a judgment of conviction ordinarily cannot be upheld if the record discloses a violation of the right." (internal quotation marks omitted).

---

**4.** The verdict sheet was, in fact, completed in contravention of the trial court's instructions. The court instructed the jury:

"If your answer to that question would be not guilty, then I would ask you to consider Question Number Two, which is second degree murder of Jackson Rodriguez.

"After you have done that, then Question Three and Four relate to the attempted first and second degree murder of Tony Perry. You would consider first degree murder. If your answer to that would be not guilty then you would consider attempted second degree murder of Tony Perry."

It was told to use the same analysis with regard to the assault degrees. If there were a question about this, the ambiguity of the instruction would nevertheless warrant concern and a desire to inquire into why the jury completed the sheet as it did. The effect and consequence of the jury having done so, in any event, was a matter that could, and should, have been addressed during the verdict taking phase of trial.

**5.** In truth, neither was the State. The difference, however, is that the non-disclosure did not, under the circumstances, potentially prejudice the State.

Our Rule 4–326(d) jurisprudence, thus, demonstrates that the majority's conclusion that verdict sheets are not "communications" within its contemplation is unfounded, both in light of the plain language of the rule, and the rights it seeks to protect. This is made especially clear upon reviewing the facts of this case where the petitioner's constitutional and common law right to be present was, in fact, infringed upon by the trial court's nondisclosure. The record demonstrates that, whether or not the jury misunderstood the detailed instructions provided by the trial court, it answered questions that did not need to be answered and that the court appeared to say did not have to be answered, resulting in inconsistent verdicts, and, thus, logically could be found to be confused. The court's failure to disclose the verdict sheet, then, and the courtroom clerk's failure to read the sheet in its entirety, deprived defense counsel of valuable information necessary to the defense of his client and deprived the petitioner of information that gave substance to his right to be present. With the knowledge that the jury failed to comply with the instructions they were provided, the petitioner would have had an opportunity to provide input, including urging the court to take curative measures. The existence of this possibility, alone, is sufficient to call into question whether the petitioner's rights were safeguarded throughout the trial. Such uncertainties have no place in criminal proceedings, where the freedom and, indeed, the lives of defendants are at stake.

Additionally, whether a verdict sheet constitutes the final verdict of the jury may be an interesting question to be addressed, but it is hardly one that is dispositive of the pivotal question in this case—whether the trial court, upon receipt, was required to disclose the contents of the verdict sheet to the petitioner. Consequently, as we did not grant certiorari on that issue and it is not argued by the petitioner, I believe that it should not have been decided.

The verdict sheet was, in fact, completed in contravention of the trial court's instructions. The effect and consequence of the jury having done so must be addressed as a part of the Court's overall analysis. In any event, I do not agree that the

intermediate appellate court's refusal to accept the petitioner's argument that the verdict sheet was completed in error, as the majority believes, 60, 33 A.3d at 985, somehow limits this Court's ability to address that very issue anew or, at the very least, to consider it as part of our overall analysis. We are authorized to review the decision of the lower court *de novo,* and may do so, in its entirety, regardless of that court's disposition. *See* Md. Rule 8–131. Furthermore, as I have explained, even if we were to accept the proposition that the verdict sheet was not completed in error, the plain language of Rule 4–326(d) still requires a trial court to disclose its contents under all circumstances.

The majority conflates the issue before this Court, whether a jury verdict sheet is a jury communication, with a related, but irrelevant question, whether a verdict sheet constitutes the actual verdict of a jury. Admitting that the latter issue was not raised by the petitioners and is not one on which we granted "cert," it justifies its decision to address it by reference to the petitioner's complaint with regard to the clerk's failure to read the verdict sheet in its entirety, in which he referred to the verdict sheet as "the ultimate communication," implying, according to the majority, 70–71, 33 A.3d at 991, that the verdict sheet constituted the verdict itself. That is, I think, an overly expansive and inappropriate understanding of the petitioner's position. As I read the question he presents, whether a trial judge is required to disclose the contents of a verdict sheet, particularly, when it "evidences an inconsistent verdict, confusion and/or possible acquittal, and which verdict sheet was only partially covered during oral pronouncement of the verdict by the jury," the petitioner is simply seeking to assert that the clerk's failure to read the answers to the other questions, much like the court's decision not to disclose the contents of the verdict sheet, denied the petitioner the knowledge that it was completed in error and, more important, the opportunity to urge the court to take curative measures before the conclusion of the proceedings. Addressing those circumstances did not require the majority to determine whether a verdict sheet constituted the verdict of the jury. Its relevance

to our inquiry is in its indication that the failure of the trial court to disclose the contents of the verdict sheet not only ran afoul of the language of Rule 4–326(d), but also, that the court's and the clerk's subsequent conduct infringed upon the petitioner's right to be present at every critical stage of the trial, a right which the rule seeks to protect.

## III.

It is particularly troublesome that the majority fails to sufficiently support its position and, instead, seeks to debunk the notion that a verdict sheet constitutes a communication within the reach of Rule 4–326(d), with an analysis intended to demonstrate that a verdict sheet is distinguishable from the actual verdict of the jury. I do not undertake to explore that question since, as I have explained, that is not the issue before this Court today. Indeed, even if a verdict sheet is not considered the actual jury verdict, this does not make it any less of a communication which pertains to the action. The majority's decision to embark upon that line of analysis was, thus, unnecessary, as the issue of distinguishing the verdict sheet from the actual verdict does not, and should not, bear on the conclusion of whether this particular verdict sheet is a communication as contemplated by Rule 4–326(d).

I dissent.